IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAREL COLE GORDON, | ) |
|     Plaintiff and Counter-Defendant, | ) Civil Action No. 7:20cv00692 |
| v. | ) **MEMORANDUM OPINION** |
| BLUE MOUNTAIN THERAPY, LLC, | ) By:   Hon. Thomas T. Cullen |
|     Defendant and Counter-Plaintiff. | )           United States District Judge |

Defendant Blue Mountain Therapy, LLC ("BMT" or "Blue Mountain"), hired Plaintiff Jarel Gordon in April 2017 and later promoted him to develop therapy programs for children with special needs. At some point thereafter, Gordon began using personal leave to care for his brother who suffers from serious health conditions. Gordon alleges that less than a year later, BMT unlawfully terminated his employment. Gordon, in turn, filed the present action under the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et *seq.*

After this suit was filed, BMT filed a counterclaim alleging that while employed with BMT, Gordon secretly entered into contracts for his own benefit that should have gone to his employer. BMT maintains that in doing so, Gordon both committed fraud and violated (1) his Employment Agreement, (2) the duty of loyalty he owed to BMT, and (3) the corporate opportunity doctrine. Gordon has moved to dismiss the Counterclaim in its entirety for failure to state a claim. The motion has been fully briefed and argued, and it is ripe for decision.

For the reasons explained below, the court finds that BMT has plausibly alleged claims for breach of contract, breach of the common law duty of loyalty, breach of the corporate

1

opportunity doctrine, and fraud. The court will therefore deny Gordon's motion to dismiss in its entirety.

## BACKGROUND

In considering Gordon's motion to dismiss, the court construes as true the following allegations in BMT's Counterclaim.[1] *See, e.g.*, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) ("When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.").

BMT provides a variety of health therapy services in Virginia and Tennessee. Countercl. ¶ 6, ECF No. 5. BMT regularly enters into contracts with school systems and other entities to provide therapy services to students. *Id.* ¶ 7.

BMT hired Gordon in April 2017 and entered into a written employment agreement with him on June 28, 2017, for the position of Licensed Behavior Analyst/Behavior Specialist. *Id.* ¶¶ 8, 9. On January 8, 2018, BMT and Gordon entered into a second written employment agreement for the position of Director of ABA Services. *Id.* ¶ 10. Then, on August 15, 2018, BMT and Gordon entered into an "Amendment to Employment Offer for Full-Time Director of ABA Services." *Id.* ¶ 11.

Gordon's January 8, 2018, Employment Agreement stipulates that he agree to "remain loyal to Blue Mountain, its owners and interests." *Id.* ¶ 12 (quoting Countercl. Ex. 2 ¶ 4(d), ECF No. 5-2). Moreover, Gordon was obliged under the Agreement to "declare any and all

---

[1] The court will not summarize the detailed allegations in Gordon's Complaint, because they are not relevant to his motion to dismiss BMT's Counterclaim.

potential conflicts of interest at the time of signing [the] Agreement, and any future conflicts as they arise." *Id.* (quoting Countercl. Ex. 2 ¶ 5(a)). The January 8, 2018, Agreement advises that conflicts include, but are not limited to, "taking steps to start a competing company or ownership interest in, or operation of, any contract therapy agency or contract therapy related operation, or any relationship whether personal or professional which would impair [Gordon's] ability to devote his . . . full efforts and loyalty to Blue Mountain." *Id.* (first alteration in original). Finally, the Agreement provides that "[f]ailure to declare a potential conflict of interest at the time a conflict is known or anticipated will result in immediate termination and potential damages due Blue Mountain." *Id.* (quoting Countercl. Ex. 2 ¶ 5(b)).

In an email to Clint Waddell, President of BMT, Gordon represented that he was "not seeking other contracts" outside of his role with BMT. *Id.* ¶ 13 (quoting Countercl. Ex. 4, ECF No. 5-4). But after sending this email, Gordon apparently entered into a contract with a "school system(s) or other third party" to provide therapy to students of said "school system(s) or other third party." *Id.* ¶ 15. BMT asserts that Gordon entered into this contract outside of his role with BMT, and that the contract "required Gordon to provide therapy services to students similar to the therapy services Gordon provided as an employee of [BMT] to BMT's patients." *Id.* ¶ 16. And BMT claims that Gordon neither informed it of this business opportunity nor told BMT that he had taken it for himself. *Id.* ¶¶ 17–18. BMT also alleges that Gordon concealed and misrepresented his relationship with the "school system(s) or other third party," received compensation for the services he provided, and never submitted any of the compensation he earned to BMT. *Id.* ¶¶ 20–22. Finally, BMT maintains that

3

Gordon's outside work on behalf of the "school system(s) or other third party" prevented him from fully performing his expected duties for BMT. *Id.* ¶ 23.

During a December 13, 2019 meeting, a third party inadvertently revealed to Waddell that Gordon had been providing therapy services to individuals outside of his employment with BMT. *Id.* ¶ 25. Waddell investigated this allegation and terminated Gordon's employment. ¶ 26. Following his termination, Gordon formed an entity named "Wild Child Therapeutic Services," which provided services to clients, customers, or patients that BMT asserts either are or would have been "covered clients" had Gordon presented the opportunities to BMT and pursued the opportunities on behalf of BMT rather than for his own benefit. *Id.* ¶ 28.

The Counterclaim raises the following counts: (1) "Breach of Contract – Conflict of Interest"; (2) "Breach of the Common Law Duty of Loyalty"; (3) "Violation of the Corporate Opportunity Doctrine"; (4) "Breach of Contract – Restrictive Covenant"; (5) "Breach of Contract – Failure to Perform Duties"; and (6) "Fraud & Misrepresentation – Other Contract(s)."

## PROCEDURAL HISTORY

Gordon filed his Complaint on November 11, 2020. ECF No. 1. On February 15, 2021, BMT filed its Answer and Counterclaim. ECF No. 5. Then, on February 26, 2021, Gordon filed a motion to dismiss the Counterclaim in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 16. The Honorable Glen E. Conrad, Senior United States District Judge, transferred the case to this court on April 16, 2021. The court held a hearing on the motion to dismiss on May 24, 2021.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ANALYSIS

Gordon argues that the Counterclaim fails to state a claim and therefore must be dismissed in its entirety. The court will address each count in turn.

### I.   Count I

Count I to the Counterclaim alleges Gordon breached Paragraph 5 of his Employment Agreement with BMT by entering into "contract(s) with a school system(s) or third party to provide therapy services that Gordon could have provided as an employee of [BMT]," and thereby creating a conflict of interest that he failed to disclose. Countercl. ¶¶ 34–37. To state a claim for breach of contract in Virginia, a plaintiff must show: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that

obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004).

In moving to dismiss, Gordon argues Paragraph 5, which covers Conflicts of Interest, is too ambiguous to support a breach of contract claim. Pl.'s Mem. Supp. Mot. Dismiss 5, ECF No. 17. Paragraph 5(a) provides:

> Employee shall declare any and all potential conflicts of interest at the time of signing this Agreement, and any future conflicts as they arise. Such conflicts include, but are not limited to, taking steps to start a competing company or ownership interest in, or operation of, any contract therapy agency of contract therapy related operation, or any relationship whether personal or professional which would impair Employee's ability to devote his or her full efforts and loyalty to Blue Mountain.

Countercl. Ex. 2 ¶ 5(a). To this end, Gordon contends that the phrase "devote . . . full efforts" is impermissibly subjective because an employer and employee could interpret its meaning differently. Pl.'s Mem. Supp. Mot. Dismiss 5–6. Gordon also contends in the alternative that BMT has not pleaded sufficient facts under Federal Rule of Civil Procedure 8 because the Counterclaim merely alleges that Gordon attempted to enter into outside contracts with "a school system(s) or other third party to provide therapy services," but does not actually name any alleged "school system(s) or other third parties." *Id.* at 6 (quoting Countercl. ¶¶ 15, 20–22, 34–36).

The court does not agree that Paragraph 5(b) is ambiguous and concludes that Count I states a claim for breach of contract. Paragraph 5(b) plainly bars Gordon from competing with BMT and from incurring conflicts of interest, and the Counterclaim plausibly alleges that Gordon did just that by secretly entering into side deals for his own benefit. Gordon's arguments concerning Rule 8 are also unpersuasive. As BMT points out, "[t]he specific

6

identity of the school system" Gordon allegedly contracted with "is irrelevant for purposes of BMT's counterclaim." Def.'s Mem. Opp'n Mot. Dismiss 6, ECF No. 18. Although BMT will ultimately need to determine which school systems or other third parties Gordon allegedly did business with to establish this claim, those identities are not material at the motion to dismiss stage. By its terms, the employment agreement prohibited Gordon from personally contracting with any school system, and Count I adequately alleges that he did just that. The court will therefore deny the motion to dismiss as to Count I.

## II. Count II

Count II alleges Gordon breached the common law duty of loyalty he owed to BMT by entering into outside contracts and directly competing with BMT. *Id.* ¶¶ 40–42. The Supreme Court of Virginia has "long recognized that under the common law an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment." *Williams v. Dominion Tech. Partners, L.L.C*, 576 S.E.2d 752, 757 (Va. 2003). Included within this duty is "is the more specific duty that the employee not compete with his employer during his employment." *Id.* The employee is therefore "duty bound not to act adversely to the interest of his employer by serving or acquiring any private interest of his own in antagonism or opposition thereto." *Powers v. Coble*, No. 7:05cv00436, 2007 WL 840114, at *3 (W.D. Va. Mar. 16, 2007) (quoting *Horne v. Holley*, 188 S.E.2d 169, 172 (Va. 1936)).

Gordon asserts that "Counts I and II cannot exist together." Pl.'s Mem. Supp. Mot. Dismiss 5. And because (1) under the Employment Agreement Gordon was required to disclose conflicts of interest, and (2) Count I alleges Gordon breached the Employment

7

Agreement for failing to do so, Count II cannot survive the motion to dismiss, Gordon contends. *Id.*

Another court in this district has already considered a similar argument and found it unpersuasive. In *Combined Insurance Company of America v. Wiest*, the court rejected the proposition that tort claims for breach of fiduciary duties in the employment context are precluded when an employment contract governs. 578 F. Supp 2d 822, 832–33 (W.D. Va. 2008). Because Virginia law recognizes the tort of breach of fiduciary duties in the employment context, and "almost all employment relationships are founded on contract," the *Weist* court persuasively reasoned that "it is abundantly clear that the Supreme Court of Virginia did not intend to render the two causes of action mutually exclusive." *Id.* at 833. Gordon has failed to cite any authority undermining this conclusion. Accordingly, the court will deny the motion to dismiss as to Count II.

### III. Count III

Count III alleges Gordon violated the common law corporate opportunity doctrine by "enter[ing] into contracts with a school system(s) or third party to provide therapy services for his own benefit, rather than the best interest of his employer" and failing to disclose those business opportunities to BMT. Countercl. ¶¶ 47–49. "It is a fundamental principle that a corporate officer or director is under a fiduciary obligation not to divert a corporate business opportunity for personal gain because the opportunity is considered the property of the corporation." *Today Homes, Inc. v. Williams*, 634 S.E.2d 737, 742–43 (Va. 2006). Gordon argues the court should dismiss Count III with prejudice because, in Virginia, "a 'violation of the Corporate Opportunity' is only cognizable as a claim under a breach of the duty of loyalty."

Pl.'s Mem. Supp. Mot. Dismiss 7. BMT instead asserts that Gordon seized business opportunities for his own benefit and at BMT's expense while he was employed there and that this conduct "constitute[s] a tort, whether it is called 'breach of duty' or violation of the 'corporate opportunity doctrine.'" Def.'s Mem. Opp'n Mot. Dismiss 11.

As a threshold matter, the court acknowledges that in terms of pleading, "usurpation of corporate business opportunity is generally considered a breach of fiduciary duty rather than conduct constituting a direct cause of action." *Feddeman & Co., C.P.A., P.C., v. Langan Assocs., P.C.*, 530 S.E.2d 668, 675 n.1 (Va. 2000). The court agrees, however, with BMT's assertion that "[t]he fact that BMT's counterclaim did not specify that the Corporate Opportunity Doctrine is technically a subcategory of an employee's fiduciary duty is irrelevant and not grounds for dismissal," and that Gordon's argument is ultimately one of "semantics." Def.'s Mem. Opp'n Mot. Dismiss 11. The Counterclaim alleges Gordon failed to disclose business opportunities to BMT and instead entered into contracts for his own benefit while still employed with BMT. *See* Countercl. ¶¶ 47–49. Whether the cause of action arising from these allegations is more aptly labeled a breach of fiduciary duties is beside the point. In the body of its counterclaim, BMT has plausibly alleged a breach of the corporate opportunity doctrine, and the court will therefore deny the motion to dismiss as to Count III.

**IV.    Count IV**

Count IV alleges Gordon breached Paragraph 8 of his Employment Agreement with BMT by refusing to pay BMT "a sum equal to the gross fees" that Gordon billed other school systems over a one-year period. Countercl. ¶¶ 52–57. Paragraph 8, titled "Restrictive

9

Covenant," is expressly intended "to discourage Employee from ever soliciting covered clients for a competing entity," and stipulates as follows:

> If this Agreement is terminated and Employee forms, joins or assists a competing entity for him/her self, in partnership with one or more persons, or as an agent or employee of a corporation or some other entity, then Employee agrees to reimburse Blue Mountain a sum equal to the gross fees billed by Blue Mountain and the gross fees billed by any of Blue Mountain's affiliated companies, for each covered client for the last twelve months of service immediately preceding Employee's termination of employment with Blue Mountain, or in the event of less than twelve months service to the covered client, an annualized amount of the gross fees.

Countercl. Ex. 2 ¶ 8. Gordon argues that Paragraph 8 is unenforceable and that Count IV therefore fails to state a claim. Pl.'s Mem. Supp. Mot. Dismiss 7–10.

In Virginia, a restrictive covenant such as a non-compete or non-solicitation agreement is enforceable if it is (1) "narrowly drawn to protect the employer's legitimate business interest," (2) "not unduly burdensome on the employee's ability to earn a living," and (3) "not against public policy." *Wiest*, 578 F. Supp. 2d at 828 (quoting *Omniplex World Servs. v. U.S. Investigations Servs., Inc.*, 618 S.E.2d 340, 342 (Va. 2005)). Restrictive covenants are disfavored restraints on trade, and courts strictly construe any ambiguous provisions therein against the employer. *Id.* Determining the enforceability of such an agreement "requires consideration of the agreement in terms of function, geographic scope, and duration, with these factors considered together." *Id.* The employer "bears the burden of proving each of these factors." *Home Paramount Pest Control Cos., Inc. v. Shaffer*, 718 S.E.2d 762, 764 (Va. 2011).

Moreover, a particular restrictive covenant's validity "must be determined on its own facts." *Assurance Data, Inc. v. Malyevac*, 747 S.E.2d 804, 808 (Va. 2013) (quoting *Mod. Env'ts,*

10

*Inc. v. Stinnett*, 561 S.E.2d 694, 695 (Va. 2002)). "This factual determination may not be made 'in a factual vacuum,' and courts must determine if a restrictive covenant is enforceable 'based on the evidence presented.'" *O'Sullivan Films v. Neaves*, No. 5:17-CV-00031, 2017 WL 4798997, at *7 (W.D. Va. Oct. 24, 2017) (quoting *Assurance Data*, 747 S.E.2d at 808) (alteration omitted). In *Neaves*, a court in this district concluded that the enforceability of a restrictive covenant cannot be determined on a motion to dismiss for failure to state a claim. *Id.* at *8. Because "*Assurance Data* forecloses facial attacks on restrictive covenants" and "requires that [the employer] be given the chance to present evidence that shows that the restraints in the [non-solicitation agreement] were no greater than necessary to protect its business," the court concluded that the issue could not be resolved at the Rule 12(b)(6) stage. *Id.*

In light of *Neaves* and *Assurance Data*, the court will deny the motion to dismiss as to Count IV. With a fully developed factual record, Gordon may ultimately establish that the covenant at issue is impermissibly restrictive under Virginia law. But discovery has not yet occurred, and Paragraph 8's enforceability may not be determined "in factual vacuum." *Assurance Data*, 747 S.E.2d at 808. Accordingly, dismissal at this stage is not appropriate.

## V. Count V

Count V again asserts a breach of contract claim, this time alleging that Gordon breached Paragraphs 4 and 5 of his Employment Agreement "by neglecting his duties and not performing the work that was required of him under the Employment Agreement." Countercl. ¶¶ 60–61. As stated above, Paragraph 5 barred Gordon from incurring conflicts of interest. Paragraph 4 provides for various requirements, including that Gordon "maintain regular office hours" while understanding "that the hours of work may be adjusted as job

11

requirements demand," and that Gordon "meet the expectations of Blue Mountain management." Countercl. Ex. 2 ¶ 4. Paragraph 4 also requires that Gordon "remain loyal to Blue Mountain, its owners and interests" while employed there. *Id.*

Gordon argues that Count V fails to state a claim for breach of contract for a variety of reasons, including because the Employment Agreement provided BMT an exclusive remedy that BMT capitalized on when it terminated Gordon for cause in December 2019. Pl.'s Mem. Supp. Mot. Dismiss 10. Gordon contends that because "the Court cannot provide any relief that Defendant did not already exercise, namely terminating Plaintiff, Count V should be dismissed with prejudice." *Id.*

The court does not agree. Nothing in the Employment Agreement limits BMT from obtaining damages in the event of a breach. Indeed, Paragraph 5(b) of the Employment explicitly states that "[f]ailure to declare a potential conflict of interest at the time a conflict of interest at the time a conflict is known or anticipated will result in immediate termination **and potential damages** due Blue Mountain." Countercl. Ex. 2 ¶ 5(b) (emphasis added). And as BMT points out, Gordon's own Complaint seeks damages for BMT's alleged breach of the Employment Agreement. Gordon's argument that BMT already obtained all available relief when it terminated Gordon is belied by the express language of the contract.

BMT has adequately stated a claim for breach of Paragraphs 4 and 5 of the Employment Agreement by alleging Gordon neglected his duties by pursuing outside business for his own benefit after assuring BMT that he could not do so. The court will therefore allow Count V to move forward.

## VI. Count VI

Finally, VI alleges Gordon made false and materially misleading representations of fact when he sent an email to Waddell asserting that Gordon declined a school consulting contract, and that he was not seeking other contracts. Countercl. ¶¶ 64–65. BMT claims that it reasonably relied on these misrepresentations to its detriment and suffered damages. *Id.* ¶¶ 66–68. In Virginia, to state a claim for fraud, the plaintiff must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *State Farm Mut. Auto. Ins. Co. v Remley*, 618 S.E.2d 316, 321 (Va. 2005) (quoting *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1991)).

Gordon first argues that Count VI must be dismissed under the "source of duty" rule because it sounds only in contract law, and not tort law. Alternatively, Gordon asserts that Count VI does not satisfy Rule 9's specificity requirement.

### a. Source of Duty Rule

In moving to dismiss, Gordon contends that the source of duty rule requires that the court determine whether Count VI sounds in contract or tort. Gordon asserts that Counts I, IV, and V to the Counterclaim all relate to an alleged breach of contract related to his alleged failure to disclose business opportunities to BMT, meaning that "[a]ny alleged misrepresentation related to these alleged business opportunities would sound in contract under the breach of contract counts." Pl.'s Mem. Supp. Mot. Dismiss 11. He therefore argues that Count VI, a fraud claim, "cannot survive contemporaneously with contract claims covering the same acts or omissions . . . ." *Id.*

13

"In determining whether a cause of action sounds in tort, contract, or both, the source of the duty violated must be ascertained." *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 254 (Va. 2019) (quoting *MCR Fed., LLC, v. JB&A, Inc.*, 808 S.E.2d 186, 192 (Va. 2017)) (internal quotation marks omitted). The Supreme Court of Virginia has instructed that a claim is founded only on contract, and not tort, if it arises from "an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) . . . ." *Richmond Metro. Auth. v. McDevitt. St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (quoting *Oleyar v. Kerr, Trustee*, 225 S.E.2d 398, 399–400 (Va. 1976)).

Moreover, a court in this district and the United States District Court for the Eastern District of Virginia have both concluded that "*Richmond Metro* properly preserved the traditional distinction in Virginia law between 'a statement that is false when made (which is fraud) and a statement that becomes false only when the promisor later fails to keep his word (which is a breach of contract).'" *Pre-Fab Steel Erectors, Inc. v. Stephens*, No. 6:08-cv-00039, 2009 WL 891828, at *9 (W.D. Va. Apr. 1, 2009) (quoting *Insteel Industries, Inc. v. Costanza Contracting Co., Inc.*, 276 F. Supp. 2d 479, 485 (E.D. Va. 2003)).

In *Pre-Fab*, this court allowed a fraud claim to proceed after it determined that it "ar[ose] from a common law duty separate and independent from any contractual duties arising from Plaintiff's arrangements with Defendants." *Id.* at *9. The court concluded that the plaintiffs' allegations that the defendants "took advantage of their access to Plaintiff's funds, dealt Plaintiff's funds to themselves, and failed to disclose and deliberately concealed the unauthorized pay raises and distributions" amounted to "allegations not of a mere failure to

14

perform the contract, *i.e.*, nonfeasance, but of malfeasance" and allowed the fraud claim to survive the defendants' motion to dismiss. *Id.*

For similar reasons, the court finds that BMT's fraud claim "can co-exist with a breach of contract claim in this action, certainly at the motion to dismiss stage." *Id.* As BMT points out, Count VI does not arise from any duty Gordon owed under the Employment Agreement, but rather "is based on the fact that Plaintiff made a false statement regarding a material fact that was intended to mislead BMT, conceal facts from BMT, and benefit Plaintiff's personal business to the detriment of BMT." Def.'s Mem. Opp'n Mot. Dismiss 20. The Counterclaim alleges Gordon made "false and materially misleading" representations of fact when he told Waddell in a September 16, 2018, email that he (1) "passed on a school consultation contract," (2) could not simultaneously "do the school consultation contract and perform his duties for [BMT]" and (3) "was not seeking other contracts." Countercl. ¶ 64. Gordon's statements, as alleged, therefore amount to "not of a mere failure to perform the contract, *i.e.*, nonfeasance, but of malfeasance," meaning Count VI is not barred under the source of duty rule. *Pre-Fab*, 2009 WL 891828, at *9.

### b. Rule 9(b)

Gordon also argues that Count VI does not satisfy Rule 9(b)'s specificity requirement because it does not plead "what entities, if any, Plaintiff allegedly contracted without Defendant's knowledge." Pl.'s Mem. Supp. Mot. Dismiss 11. Federal Rule of Civil Procedure 9(b) requires that parties plead fraud claims with particularity. "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what

he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (internal quotation marks and citation omitted). The Fourth Circuit has cautioned that "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Edmondson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir 2019) (internal quotation marks and citation omitted) (alteration in original).

The court finds Gordon's arguments unpersuasive. The Counterclaim alleges that Gordon made specific fraudulent statements in an email to BMT President Clint Waddell and includes that email as an exhibit. *See* Countercl. Ex. 4. As BMT points out, "[i]t is hard to be more particular than that." Def.'s Mem. Opp'n Mot. Dismiss 21. Finally, because Count VI alleges that Gordon, on a date certain, falsely assured Waddell he was not pursuing outside contracts for his own benefit and that BMT reasonably relied on that misrepresentation to its detriment, the specific identity of any client he contracted with is immaterial—at least at this preliminary stage. In sum, Count VI adequately states a claim for fraud.

## CONCLUSION

For the reasons stated above, Gordon's motion will be **DENIED**.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 4th day of June, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

16